J-S01042-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| TRAVOYCE O'NEIL | |
| Appellant | No. 1398 WDA 2014 |

Appeal from the Judgment of Sentence August 19, 2014
In the Court of Common Pleas of Fayette County
Criminal Division at No(s): CP-26-CR-0002169-2013

BEFORE:  GANTMAN, P.J., JENKINS, J., and MUSMANNO, J.

MEMORANDUM BY GANTMAN, P.J.:                    **FILED APRIL 21, 2015**

Appellant, Travoyce O'Neil, appeals from the judgment of sentence entered in the Fayette County Court of Common Pleas, following his jury trial convictions for persons not to possess a firearm, firearms not to be carried without a license, and resisting arrest as well as the bench convictions for criminal mischief and public drunkenness.[1]  We affirm.

The relevant facts and procedural history of this case are as follows. The testimony at trial disclosed that, during the early morning hours of October 13, 2013, Officer Matthew Painter of the Uniontown City Police Department was dispatched to Mount Vernon Towers in Uniontown, Fayette

---

[1] 18 Pa.C.S.A. §§ 6105(a)(1), 6106(a)(1), 5104, 3304(a)(5), 5505, respectively

County, Pennsylvania, for a disturbance on the fifth floor. Pulling into the parking lot, Officer Painter observed Appellant and two females exiting the rear door to the complex. Officer Painter tried to gather some basic information about where they were coming from and whether they had any involvement in the fifth floor disturbance. Officer Painter initially interacted with Appellant, who was evasive and refused to give his name. Officer Painter described Appellant's physical condition as emitting a strong odor of alcoholic beverage from his nose and mouth area. Officer Painter also described Appellant as having bloodshot eyes. Officer Painter concluded Appellant was intoxicated.

While Officer Painter was trying to speak with Appellant, Officer Jonathan S. Grabiak arrived, approached Officer Painter, and also tried to talk with Appellant. Officer Grabiak left them to talk to the two females present. Without disclosing what the females said, Officer Grabiak testified he told Officer Painter that Appellant had a firearm. Officer Painter asked Appellant to turn around so he could be arrested and handcuffed for public drunkenness.

Initially, Appellant complied, but suddenly he fled. Officer Painter chased Appellant for about 12-15 feet, while Officer Grabiak tried unsuccessfully to Taser Appellant. Appellant continued to run. When Officer Painter was finally able to tackle Appellant, they both hit the ground; but when Appellant popped back up, they went to the ground a second time.

Officer Painter had to exert significant force to subdue Appellant. Officer Grabiak testified he saw the firearm fall out of Appellant's pants pocket and land inches away from Appellant. Officer Grabiak was able to secure the firearm. Both officers testified that the lights from the Mount Vernon Towers and the local businesses surrounding the area rendered the area absolutely well-lit. Meanwhile, Appellant continued to resist Officer Painter until Officer Grabiak successfully Tasered him; and Officer Painter was able to secure him. At the end of the Commonwealth's case, counsel stipulated that Appellant was a member of the class of persons prohibited from possessing a firearm in Pennsylvania.[2] The court then instructed the jury on the stipulation and its significance.

During his defense, Appellant admitted he was intoxicated on the night in question, but he denied possessing the gun. Appellant said Officer Painter asked Appellant his name, which he refused to give, until Officer Painter told Appellant what he had done wrong. Appellant claimed he was unfamiliar with the area, he ran because he was scared, he had no reason to run, and he had plenty of time to discard a gun if he had actually had one. Appellant said he did not resist Officer Painter. Appellant maintained Officer Painter was just being too aggressive for the situation, and Appellant was trying to minimize the damage. Appellant also claimed he later told Officer Painter

_____

[2] Appellant had a prior conviction for second-degree aggravated assault. The specific prior offense and conviction was not disclosed to the jury.

- 3 -

that the gun recovered was someone else's gun.

In rebuttal, Officer Painter testified that Appellant gave him no names of any individuals he was with that night or statements about who really had the gun. According to Officer Painter, when he asked why Appellant ran, Appellant replied: "It was his job to get away from me and my job to catch him." (N.T. Trial, 7/10/14, at 22). Following the second day of trial, the jury convicted Appellant of the firearms offenses and resisting arrest. The court found Appellant guilty of criminal mischief and public drunkenness.

The court sentenced Appellant on August 19, 2014, to thirty (30) to sixty (60) months' incarceration,[3] followed by two (2) years' probation, on the persons not to possess conviction, with credit for time served, plus costs, fees, and restitution for the broken watch. Due to the nature of the offenses, the court also found Appellant RRRI ineligible. The court imposed no further penalty on the remaining convictions. At sentencing, Appellant registered a complaint about the prosecution's closing argument. Specifically, Appellant complained the prosecutor told the jury (1) they should believe the police officers because they were police officers and (2) the two women at the scene told Officer Grabiak that Appellant had a firearm, even though the court said it was hearsay. (N.T. Sentencing,

_____

[3] With a prior record score of 3 and an offense gravity score of 10, the mitigated sentencing guidelines range was 30-42 months. Appellant's sentence fell in the mitigated range.

8/19/14, at 4-5).   The court thoroughly instructed Appellant on his post-sentence motion and appeal rights and responsibilities.   Appellant timely filed a notice of appeal on August 25, 2014, along with a voluntary concise statement of errors complained of on appeal, per Pa.R.A.P. 1925(b).

Appellant raises one issue for review:

> WHETHER THE WEIGHT OF THE EVIDENCE OUTWEIGHS THE GUILTY VERDICT…THUS ENTITLING [APPELLANT] TO A NEW TRIAL?

(Appellant's Brief at 5).

Appellant initially concedes the parties entered a stipulation at trial that Appellant was a member of the class of persons prohibited from possessing a firearm in Pennsylvania.   Appellant also concedes he has no license to carry a firearm.   Nevertheless, Appellant claims the incident occurred in the dark of night, he was unfamiliar with the area, and he ran because he was scared.   Officer Painter, who chased after Appellant, did not see a gun fall from Appellant's pants pocket or hear it hit the ground.   Yet, Officer Grabiak, who was also at the scene, testified he was able to see, through the dark, a gun come from Appellant's front pants pocket and fall to the ground as Appellant was tackled.   Appellant contends there is no logical way the jury could conclude, based on the officers' testimony, that Appellant possessed the gun, when Officer Painter (the tackling officer) did not see or hear a gun come from Appellant.   On the same basis, Appellant challenges his conviction for firearms not to be carried without a license.

Appellant further complains the testimony at trial demonstrated he was not told he was arrested until after the police chased and subdued him. So, Appellant maintains he was wrongfully convicted of resisting arrest. Regarding Appellant's convictions for criminal mischief and public drunkenness, Appellant claims he did not intentionally damage Officer Painter's watch, which could have been broken in some other way than in the take-down process. Appellant acknowledges Officer Painter and Officer Grabiak said Appellant had a strong odor of alcohol on his breath and glassy, bloodshot eyes, when they encountered Appellant. Nevertheless, Appellant insists he was not the reason for the disturbance call nor was he reported as an annoyance or causing the destruction of property. Based on the totality of the Commonwealth's evidence and Appellant's evidence, Appellant submits all of the verdicts should be overturned, because no jury or judge could logically find the Commonwealth met every element of each crime. Appellant concludes we should overturn all guilty verdicts based on the weight of the evidence and grant Appellant a new trial. We cannot agree.

As a preliminary matter, generally, a challenge to the weight of the evidence must be preserved by a motion for a new trial. Pa.R.Crim.P. 607. The Rule provides:

**Rule 607. Challenges to the Weight of the Evidence**

(A) A claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial:

(1) orally, on the record, at any time before sentencing;

(2) by written motion at any time before sentencing; or

(3) in a post-sentence motion.

Pa.R.Crim.P. 607(A)(1)-(3). "As noted in the comment to Rule 607, the purpose of this rule is to make it clear that a challenge to the weight of the evidence must be raised with the trial judge or it will be waived." **Commonwealth v. Gillard**, 850 A.2d 1273, 1277 (Pa.Super. 2004), *appeal denied*, 581 Pa. 672, 863 A.2d 1143 (2004). A claim challenging the weight of the evidence generally cannot be raised for the first time in a Rule 1925(b) statement. **Commonwealth v. Burkett**, 830 A.2d 1034 (Pa.Super. 2003). An appellant's failure to avail himself of any of the prescribed methods for presenting a weight of the evidence issue to the trial court constitutes waiver of that claim, even if the trial court responds to the claim in its Rule 1925(a) opinion. **Id.**

Instantly, Appellant failed to challenge the weight of the evidence before the trial court by any of the available means and ask for a new trial. **See** Pa.R.Crim.P. 607. Rather, Appellant raised his weight claim for the first time in his Rule 1925(b) statement. Thus, his issue on appeal is waived. **See** Pa.R.Crim.P. 607; **Gillard, supra**; **Burkett, supra**.

Moreover, even if Appellant had properly preserved his challenge to the weight of the evidence for review, after a thorough review of the record, the briefs of the parties, the applicable law, and the reasoned opinion of the

Honorable Steve P. Leskinen, we would conclude the issue merits no relief. (*See* Trial Court Opinion, filed October 31, 2014, at 3-7) (finding: parties stipulated at trial that Appellant was in class of persons prohibited from possessing firearm; Officer Grabiak testified he saw firearm fall out of Appellant's front pants pocket, and firearm was loaded; Appellant did not have license to possess firearm; when Officer Painter tried to arrest Appellant, Appellant fled, requiring chase for about 12-15 feet; when Officer Painter tackled Appellant to ground, he struggled against Officer Painter, which required use of Taser; Appellant created substantial risk of bodily injury to both officers and forced them to use substantial force to halt Appellant's struggle; jury properly convicted Appellant of firearms offenses and resisting arrest; additionally, court found beyond reasonable doubt that Appellant intentionally damaged Officer Painter's watch and caused pecuniary loss of $150.00 as result of brawl with Officer Painter; further, when officers approached Appellant in public place, they observed Appellant's strong odor of alcohol and glassy, bloodshot eyes; court properly convicted Appellant of criminal mischief and public drunkenness; verdicts were not against weight of evidence). Although Appellant waived this issue, the record supports the court's decision to deny Appellant a new trial on the grounds alleged. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/21/2015